## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MICHAEL JONAS ULRICH and CHRISTINA ULRICH, as Trustees of the MICHAEL JONAS ULRICH AND CHRISTINA ULRICH TRUST OF 2018, )

               Plaintiffs, )

               v. )

MARKETING.COM, LLC, a Missouri limited liability company; and JAL EQUITY CORP, a Nevada corporation, )

               Defendants. )

Case No. 1:25-cv-00801-RGA

PUBLIC VERSION
DATED: July 7, 2025

## COMPLAINT

Plaintiffs Michael Jonas Ulrich ("Mr. Ulrich") and Christina Ulrich ("Ms. Ulrich") (collectively "Plaintiffs"), in their capacity as Trustees of the Michael Jonas Ulrich and Christina Ulrich Trust of 2018 (the "Trust"), bring this action against Defendants Marketing.Com, LLC ("Marketing") and JAL Equity Corp ("JAL") (collectively "Defendants") and allege as follows:

## GENERAL ALLEGATIONS

1. Mr. Ulrich, a trustee of the Trust, is, and at all times herein mentioned was, an individual, residing and domiciled in the State of California.

2. Ms. Ulrich, a trustee of Trust, is, and at all times herein mentioned was, an individual, residing and domiciled in the State of California.

3. Plaintiffs are informed and believe and thereon allege Marketing is, and at all times herein mentioned was, a Missouri limited liability company with a principal place of business located in the State of Missouri.

4.      Plaintiffs are informed and believe and thereon allege JAL is, and at all times herein mentioned was, a Nevada corporation with a principal place of business located in the State of Delaware.

5.      Plaintiffs are informed and believe and thereon allege that at all times herein mentioned each of the defendants were acting as agents of each of the remaining defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency, and with the permission and consent of his, her, or its co-defendant.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S. Code § 1332 because there is complete diversity between Plaintiffs and Defendants and the amount in controversy is more than $75,000.00.

7.      Personal Jurisdiction over Marketing is proper because it agreed to submit to the jurisdiction of this Court when it agreed that, in accordance with the relevant Agreement referenced below and the subject of this litigation, "[a]ny proceeding arising out of or relating to this Agreement or the Transactions shall be brought only in the federal courts situated in the State of Delaware.  This provision may be filed with any court as written evidence of the knowing and voluntary irrevocable agreement between the parties to waive any objections to jurisdiction, to venue or to convenience of forum."  *See* Exhibit A at ¶ 8.4.

8.      Personal Jurisdiction over JAL is proper because it agreed to submit to the jurisdiction of this Court when it agreed that, in accordance with the relevant Corporate Guarantee referenced below and the subject of this litigation, "[t]his Guarantee is to be governed by and construed in accordance with the laws of the State of Delaware, without regard to any conflict of law principle that would cause the substantive law of another jurisdiction to apply.  The exclusive

venue for the resolution of any dispute arising out of or relating to this Guarantee is in the federal courts situated in the state of Delaware, and Guarantor hereby submits to personal jurisdiction in that forum and waives any objection to that forum." *See* Exhibit C at ¶ 10.

9.      Venue is proper in this District under 28 U.S. Code § 1391(b)(3) because Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

10.     On or around December 29, 2023, Plaintiffs and Marketing entered into a written Equity Purchase Agreement ("the "Agreement") whereby Plaintiffs agreed to sell all of the Equity Interests Plaintiffs had in Response Envelope, Inc., a California Corporation ("Response Envelope"), to Marketing.  A true and correct copy of the executed Agreement is attached and incorporated herein as Exhibit A.

11.     Per Article I, Section 1.7(a) of the Agreement, in addition to remitting the Purchase Price of Plaintiffs' Equity Interests in Response Envelope, Marketing was to remit a total of ███ ████████████████████ payable monthly over thirty-six (36) consecutive monthly installments of ████████ beginning on January 31, 2024 following the Closing Date ("Post-Closing Payments").

12.     Per Article I, Section 1.2 of the Agreement, the closing of the Transactions would take place remotely via electronic exchange of documents and simultaneously with the execution of the signature pages of the Agreement (the "Closing Date").  Per this definition, the Closing Date was December 29, 2023 and Marketing's Post-Closing Payments were thus due shortly thereafter.

13.     Additionally, per Article 1, Section 1.6 of the Agreement, "[t]o secure the indemnification, payment and performance obligations of the Seller [Plaintiffs] under this Agreement including pursuant to Section 1.5, ARTICLE V, and ARTICLE VII, the Buyer

[Marketing] will withhold the Holdback Amount to be held and distributed by the Buyer [Marketing] on the terms and conditions of Section 7.8."

14.     Per Section 7.8 of the Agreement, Marketing was also to pay Plaintiffs $████████ of the Holdback Amount agreed upon within three (3) business days of the twelve-(12) month anniversary of the Closing Date and $████████ of the Holdback Amount agreed upon within three (3) business days of the twenty-four (24) month anniversary of the Closing Date:

> Within three (3) business days after the twelve (12)-month anniversary of the Closing Date, Buyer [Marketing] shall release to the Seller [Plaintiffs] ████████ of the Holdback Amount less any unpaid amounts related to any unresolved indemnification claims (including the amount of any reasonably estimated claim made). Within three (3) business days after the twenty-four (24)-month anniversary of the Closing Date, Buyer shall release to the Seller the remaining Holdback Amount less any unpaid amounts related to any unresolved indemnification claims (including the amount of any reasonably estimated claim made). After the twenty-four (24) month anniversary of the Closing Date, following Final Determination of any outstanding indemnified amount asserted by Buyer, Buyer shall release to Seller the balance of the Holdback Amount within three (3) business days.

15.     Thus, per the Agreement, Marketing was to remit payment of $████████ to Plaintiffs within three (3) business days of December 29, 2024, the twelve (12) month anniversary of the Closing Date. Per the Agreement, Marketing would owe the remainder of the Holdback Amount, an additional $████████ within three (3) business days of December 29, 2025, the twenty-four (24) month anniversary of the Closing Date.

16.     JAL, the sole member of Marketing, executed a Written Consent ("Written Consent") approving the transaction between Plaintiffs and Marketing on December 29, 2023. A true and correct copy of the executed Written Consent is attached and incorporated herein as Exhibit B.

17.     Per Article I of the Written Consent, JAL agreed as follows:

WHEREAS, the sole director of the Company's [Marketing] parent, JAL Equity Corp "('Parent") has **approved** the Transactions and the Transaction Documents (all as defined herein);

WHEREAS, the Company has negotiated the certain Equity Purchase Agreement in substantially the form presented to the Member prior to the date hereof (the "'Purchase Agreement"), to be entered into by and among the Company, Response, and Michael Jonas Ulrich and Christina Ulrich, Trustees of the Michael Jonas Ulrich and Christina Ulrich Trust of 2018 (the "'Seller"), pursuant to which, among other things, **the Company will acquire all of the equity interests of Response from the Seller on the terms provided in the Purchase Agreement**;

WHEREAS, **the Member has reviewed the Purchase Agreement and deems it to be advisable and in the best interests of the Company** and the Company's member to **enter into the Purchase Agreement** and the other agreements contemplated thereby and to consummate the transactions contemplated thereby (the "'Transactions")….

Ex. B. (emphasis added).

18.     Further, JAL executed a Corporate Guarantee ("Corporate Guarantee") guaranteeing Marketing's performance of obligations; namely, but not limited to, payment in full of the Post-Closing Payments and the Holdback Amount in accordance with the Agreement.  A true and correct copy of the executed Corporate Guarantee is attached and incorporated herein as Exhibit C.

19.     Per Paragraph 1 of the Corporate Guarantee, JAL agreed as follows:

Guarantor [JAL] hereby absolutely, unconditionally, and irrevocably guarantees to Beneficiary [Plaintiffs] the due, punctual, and full performance by Buyer [JAL] of each and every agreement, obligation, liability, and promise of Buyer under Section 1.7 of the Purchase Agreement, **including payment in full of the Post-Closing Payments in accordance with the Purchase Agreement.** The obligations of Buyer guaranteed by Guarantor under this Guarantee are collectively referred to as the "'Guaranteed Obligations".' This is a continuing guarantee for, and the Guaranteed Obligations include, all present and future amounts, agreements, covenants, obligations, liabilities, and promises of Buyer arising under Section 1.7 of the Purchase Agreement, as may be amended, in accordance with the Purchase Agreement."

Ex. C (emphasis added).

20.     Per Paragraph 5 of the Corporate Guarantee, JAL agreed that "[n]othing except the **full, complete, and irrevocable payment and performance of the Guaranteed Obligations in accordance with the Purchase Agreement will discharge or satisfy any liability of Guarantor** [JAL] under this Guarantee." Ex. C (emphasis added).

21.     Marketing remitted certain Post-Closing Payments in accordance with Article I, Section 1.7(a) of the Agreement in January, February, and March of 2024.  After a late payment in March 2024 and one (1) month of nonpayment in April 2024, Plaintiffs emailed Marketing on May 14, 2024 demanding the monthly payment from April 2024 and assurances that Marketing would perform in accordance with the Agreement.  Defendants failed to respond to the request.

22.     Since March 2024, Marketing has failed to make any Post-Closing Payment under the Agreement for April 2024 through May 2025, totaling fourteen (14) monthly payments or approximately ███████.

23.     Additionally, Marketing did not and has not remitted the first payment of the Holdback Amount in accordance with Section 7.8 of the Agreement to Plaintiffs.

24.     Plaintiffs performed all covenants and agreements as required of them under the Agreement.  Despite Plaintiffs having performed all covenants and agreements as required of them under the Agreement, to date there remains unpaid ███████.  This number will increase as Marketing continues to miss monthly payments.

25.     In good faith, Plaintiffs sent a notice to Marketing demanding payment on April 7, 2025.  Plaintiffs received no response.

26.     As there is no dispute regarding Plaintiffs' performance of covenants and agreements under the Agreement, Marketing's failure to timely make payments of the above-

referenced amounts constitutes a breach of Marketing's obligations under the written Agreement with Plaintiffs.

27.    Additionally, JAL's failure to timely make payments of the above-referenced amounts constitutes a breach of JAL's obligations under the written Corporate Guarantee to Plaintiffs.

28.    Further, Marketing agreed to indemnify Plaintiffs in Section 7.3(b) of the Agreement, which states:

> Subject to the other terms of this ARTICLE VII, from and after the Closing, the **Buyer and the Company shall indemnify and hold the Seller** and its Affiliates (collectively, the "Seller Indemnified Parties") **harmless** from **any and all Losses incurred** by Seller Indemnified Parties that arise or result from …(b) the **failure of the Buyer to perform any of its covenants or agreements set forth herein**….

*See* Exhibit A (emphasis added).

29.    Per Section 7.5, when seeking indemnification, Plaintiffs are entitled to "all damages, losses, expenses, costs and Liabilities (excluding any punitive damages, except to the extent awarded to a third party), including **reasonable attorneys' fees and costs of collection**." *See* Exhibit A (emphasis added).

30.    Marketing has failed to perform its covenants and agreements set forth in the Agreement, and thus, Plaintiffs are and will continue to incur damages, including reasonable attorneys' fees and costs of collection.

31.    Additionally, JAL agreed in the Corporate Guarantee that: "in any action or proceeding **arising out of or relating to this Guarantee**, the prevailing party will be entitled to recover **its attorney's fees and costs** from the non-prevailing party."  *See* Exhibit C at ¶ 11 (emphasis added).

32.     Despite demands in May 2024 and April 2025, Defendants have failed to provide Plaintiffs with any assurances or confidence that Defendants will perform their obligations under the terms of the Agreement or the Corporate Guarantee.  Thus, Defendants are in total breach of their respective Agreement and Corporate Guarantee, and the total amount owed to Plaintiffs, including monthly payments from April 2024 through December 2026 totaling ▮▮▮▮▮ and the Holdback Amount totaling ▮▮▮▮▮ is now due.

33.     Plaintiffs have incurred ▮▮▮▮▮ the total amount owed to Plaintiffs under the Agreement, but no less than ▮▮▮▮▮, the amount currently due, owing, and unpaid from Defendants.  Additionally, Plaintiffs are and will continue to incur attorneys' fees and costs of collection.

## FIRST CAUSE OF ACTION

### (Breach of Contract – As to Defendant Marketing.com, LLC)

34.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 33, inclusive and incorporates the same as though set forth in full herein.

35.     As set forth above, Plaintiffs and Defendant Marketing entered into the Agreement whereby in addition to remitting the Purchase Price of Plaintiffs' Equity Interests in Response Envelope, Defendant Marketing was to remit a total of ▮▮▮▮▮ payable monthly over thirty-six (36) consecutive monthly installments beginning on January 31, 2024 following the Closing Date. *See* Exhibit A at ¶ 1.7.

36.     Additionally, per the Agreement, Defendant Marketing was to remit payment of ▮▮▮▮▮ the Holdback Amount, to Plaintiffs within three business days of December 29, 2024, the twelve-month anniversary of the Closing Date. *See* Exhibit A at ¶ 7.8.

37.    To date, Defendant Marketing owes Plaintiffs payments in the amount of ███████ .

38.    At all times relevant to this action, Plaintiffs have performed or satisfied all or substantially all of the conditions, covenants, and promises required of them under the Agreement, except those which they have been prevented from performing or satisfying, or from which they have been excused.

39.    Plaintiffs have demanded payment of all amounts due and owing to Plaintiffs pursuant to the Agreement.

40.    Plaintiffs' demand for payment in full of the amounts due and owing to Plaintiffs have not resulted in payment in full and/or resolution.

41.    Defendant Marketing has failed to make payment to Plaintiffs of the amounts due and owing to Plaintiffs.  As such, Defendant Marketing has breached the Agreement.

42.    Defendant Marketing's performance has not been excused, prevented, or waived, and Plaintiffs have been damaged as set forth herein.

43.    As a direct and proximate result of Defendant Marketing's breach of the Agreement, Plaintiffs have suffered actual damages of ███████ , the total amount owed to Plaintiffs under the Agreement, but no less than ███████ the amount currently due, owing, and unpaid from Defendants.

44.    The Agreement provides that Defendant Marketing shall indemnify Plaintiffs for any and all Losses incurred due to the failure of Marketing to perform any of its covenants or agreements, including reasonable attorney's fees and costs.  Plaintiffs have retained legal representation to enforce their rights under the Agreement and accordingly have incurred as yet unascertained costs and attorneys' fees.

### SECOND CAUSE OF ACTION

### (Breach of Contract – As to Defendant JAL Equity Corp)

45.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 44, inclusive and incorporate the same as though set forth in full herein.

46.     As set forth above, Plaintiffs and Defendant Marketing entered into the Agreement whereby in addition to remitting the Purchase Price of Plaintiffs' Equity Interests in Response Envelope, Defendant Marketing was to remit a total of ███████████████ payable monthly over thirty-six (36) consecutive monthly installments beginning on January 31, 2024 following the Closing Date. *See* Exhibit A at ¶ 1.7.

47.     Additionally, per the Agreement, Defendant Marketing was to remit payment of ███████████ the Holdback Amount, to Plaintiffs within three business days of December 29, 2024, the twelve-month anniversary of the Closing Date. *See* Exhibit A at ¶ 7.8.

48.     As set forth above, Defendant JAL, the sole member of Defendant Marketing, executed the Written Consent approving the transaction between Plaintiffs and Defendant Marketing on December 29, 2023. *See generally*, Exhibit B.

49.     As set forth above, Defendant JAL also executed the Corporate Guarantee with Plaintiffs, guaranteeing Defendant Marketing's performance of obligations, namely, but not limited to, payment in full of the Post-Closing Payments and the Holdback Amount in accordance with the purchase agreement. *See* Exhibit C at ¶ 1.

50.     Per Paragraph 5 of the Corporate Guarantee, Defendant JAL agreed that "[n]othing except the **full, complete, and irrevocable payment and performance of the Guaranteed Obligations in accordance with the Purchase Agreement will discharge or satisfy any liability of Guarantor** [JAL] under this Guarantee." *See* Exhibit C (emphasis added).

51.     To date, Defendant Marketing owes Plaintiffs payments in the amount of ▮▮▮▮▮▮. As such, Defendant JAL owes Plaintiffs payments in the amount of ▮▮▮▮▮▮ per the Corporate Guarantee.

52.     At all times relevant to this action, Plaintiffs have performed or satisfied all or substantially all of the conditions, covenants, and promises required of them under the Corporate Guarantee, except those which they have been prevented from performing or satisfying, or from which they has been excused.

53.     Defendant JAL has failed to make sure Defendant Marketing made payments to Plaintiffs in accordance with the Agreement.  Defendant JAL has additionally failed to make payment to Plaintiffs of the amounts due and owing to Plaintiffs.  As such, Defendant JAL has breached the Corporate Guarantee.

54.     Defendant JAL's performance has not been excused, prevented, or waived, and Plaintiffs have been damaged as set forth herein.

55.     As a direct and proximate result of Defendant JAL's breach of the terms of the Corporate Guarantee described above, Plaintiffs have suffered actual damages of ▮▮▮▮▮▮ the total amount owed to Plaintiffs under the Agreement, but no less than ▮▮▮▮▮▮, the amount currently due, owing, and unpaid from Defendants.

56.     Paragraph 11 of the Corporate Guarantee provides that the prevailing party in any action between the parties is entitled to recover its reasonable attorneys' fees and costs.  *See* Exhibit C.  Plaintiffs have retained legal representation to enforce their rights under the Corporate Guarantee and accordingly have incurred as yet unascertained costs and attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgement and relief as follows:

1.     For a judgment in favor of Plaintiffs on all counts against Defendants, jointly and

severally, in the amount of ████████, the full amount contemplated, or an amount to be

proven at trial but not less than ████████;

2.     For pre-judgment and post-judgment interest in the maximum amount allowable by

law;

3.     For attorneys' fees and costs of suit incurred by Plaintiffs as allowable by law; and

4.     For such other and further relief as this Court deems just and proper.


Of Counsel:

Benjamin Price, Esquire
Jillian B. O'Meara, Esquire
BREMER WHYTE BROWN &
  O'MEARA, LLP
20320 SW Birch St.
Newport Beach, CA 92660
(949) (221-1000)
bprice@bremerwhyte.com
jiomeara@bremerwhyte.com


June 27, 2025

*/s/ Thomas A. Uebler*
Thomas A. Uebler (#5074)
Brian V. DeMott (#6025)
MCCOLLOM D'EMILIO SMITH
  UEBLER LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808
(302) 468-5960
tuebler@mdsulaw.com
bdemott@mdsulaw.com

*Attorneys for Michael Jonas Ulrich and Christina
Ulrich, as Trustees of the Michael Jonas Ulrich and
Christina Ulrich Trust of 2018*

MDSU\10445795